Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, October 30, 2006 4:36:59 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JOYCE A. NICE ) | CASE NO. 05-5500 |
| ) | |
| Debtor. ) | |

## MEMORANDUM OPINION

WesBanco Bank, Inc. ("WesBanco"), objects to the motion filed by Joyce A. Nice (the "Debtor") to cramdown the value of its secured claim against a 2005 Chevrolet Surburban from $56,600 to $36,050.[1] WesBanco argues that the replacement[2] value of the vehicle is $43,874, based on the N.A.D.A. listing for the vehicle's particular make and model, plus certain additional services and products purchased by the Debtor.

The court conducted a hearing on this issue on July 11, 2006, in Wheeling, West Virginia, at which time the court took the matter under advisement. The parties have submitted post-hearing briefing and the issue is ripe for decision. For the reasons stated herein, the court finds that the cramdown value of the vehicle is $34,359.50, which amount is subject to change based on the effective date of the Debtor's Chapter 13 plan.

## I. BACKGROUND

---

[1] This case was filed before the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act.

[2] WesBanco mistakenly refers to the "replacement" value as the "redemption" value. This is a Chapter 13 case and the court does not believe that WesBanco intended to argue that the redemption standards of 11 U.S.C. § 722 should apply.

1

On April 28, 2005, the Debtor purchased her 2005 Chevrolet Surburban V-8 Utility K1500 LS 4WD for $52,522. In addition to the cost for the make and model of the vehicle, the Debtor purchased an extended warranty ($1,995[3]), undercoat rust-proofing ($649), and theft protection ($219). After adjustments, the Debtor financed $56,586 of the total purchase price with WesBanco.

At the hearing in this case, the Debtor's counsel represented that the Surburban is necessary for her reorganization because the Debtor uses a scooter for mobility and the Surburban was capable of transporting her scooter.

## II. DISCUSSION

A determination of the correct replacement value to be used by the court in adjudicating this matter requires consideration of: (A) what presumptive replacement value standard the court will use; (B) the date on which that presumptive standard is to apply; and (C) what adjustments to that replacement value standard are appropriate based on the facts of this case.[4]

### A. The Presumptive Replacement Valuation Standard

The Debtor asserts that the presumptive replacement valuation standard should be the average between the N.A.D.A. trade-in and retail value for the particular year, make, and model of the Debtor's vehicle. The court agrees.

In *Associates Commer. Corp. v. Rash*, 520 U.S. 953, 965 (1997), the Supreme Court held that "the value of property retained because the debtor has exercised the § 1325(a)(5)(B) 'cram down' option is the cost the debtor would incur to obtain a like asset for the same 'proposed . . . use.'" The Supreme Court, however, did not specifically identify a standard method for determining a vehicle's replacement value; rather, that standard was left to the determination of the individual bankruptcy courts as the triers of fact. *Id.* at n. 6. As the Court stated, "[w]hether replacement value is the equivalent of retail value,

---

[3] WesBanco submitted an affidavit of Ray Smith, a representative of Bob Robinson Cheverlot Cadillac, Inc., which stated the Debtor's service contract was an extended warranty that cost $2,356. The "New Vehicle Extended Service Agreement" submitted by the Debtor, however, shows the price of the Agreement to be $1,995.

[4] The parties submitted that they had no dispute over the applicable interest rate; therefore, the court will not address that issue in this Memorandum Opinion.

2

wholesale value, or some other value will depend on the type of debtor and the nature of the property." *Id.* In making this determination, the bankruptcy court should focus on the debtor's proposed disposition and use of the vehicle. *Id.* at 960-63 (rejecting a foreclosure valuation standard and focusing on what "a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller.").

To assist in that determination, bankruptcy courts have developed various presumptive standards for making a replacement valuation determination because the majority of cramdown cases that come before the courts are filed by individual consumers who wish to retain and pay for their personal automobiles. Values in the automotive market are generally well defined by industry standards. For example, some courts set the presumptive replacement value of automobiles at 90% of the N.A.D.A. retail listing, *In re Capel*, No. 05-50213, 2005 Bankr. LEXIS 1094 at *28 n.9 (Bankr. M.D.N.C. 2005), the midpoint between the N.A.D.A. retail and the Kelley Blue Book private party value, *In re Gray*, 285 B.R. 379, 384 (Bankr. N.D. Tex. 2002), the N.A.D.A. retail value, *In re Russell*, 211 B.R. 12, 14 (Bankr. E.D.N.C. 1997), or the midpoint between the N.A.D.A. retail and trade-in values, *In re Henry*, 328 B.R. 529, 536 (Bankr. S.D. Ohio 2004).

In determining what the replacement value of a particular vehicle is, some deduction from the retail value of that vehicle is appropriate because "a creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning." *Rash*, 520 U.S. at 964 n.6. Thus, the N.A.D.A. retail value, or another like standard, should not be used to the extent that it includes "allowances for commissions payable to salespeople, limited mechanical and cosmetic refurbishment of the vehicle prior to sale, a limited warranty on the vehicle (if appropriate), overhead costs for storage and insurance for the vehicle, and some carrying charge for the period between the dealer's purchase of the vehicle and the sale to a customer." *Gray*, 285 B.R. at 384. On the other hand, a trade-in value – what a dealer pays for like collateral as opposed to what a dealer charges – is likely lower than a vehicle's replacement value inasmuch as the trade-in value reflects a dealer's profit motive in buying and selling the particular vehicle. Also, the focus of *Rash* is on the costs that a debtor would incur by obtaining a like asset – not on the costs that a dealer would incur.

3

Of course, the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 slightly altered some of the Supreme Court's reasoning in *Rash* insofar as the *Rash* opinion relates to personal property held by individual debtors that file under Chapter 7 or 13, and which secures an allowed claim. More specifically, for such debtors that file cases on or after October 17, 2005, new § 506(a)(2) sets the cramdown value of a vehicle at its replacement value, "without deduction for costs of sale or marketing." 11 U.S.C. § 506(a)(2). Moreover, "[w]ith respect to property acquired for personal, family, or household purposes, replacement value [for the specified categories of debtors] shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined."[5] § 506(a)(2).

The new statute does not specify what encompasses a "cost of sale" or "marketing" and the meaning of those terms will likely be the subject of future litigation. Items, including warranties and reconditioning expenses, that increase the existing value of an automobile will likely remain appropriate deductions from the vehicle's retail value. 4 *Collier on Bankruptcy*, ¶ 506.03[6][a] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2006) ("[S]ection 506(a)(2) directs that value shall be determined without deduction for costs of sale or marketing, but leaves open the possibility that the value of other items may be deducted, such as those identified by the Court in *Rash* (warranties and other items that the debtor does not receive)."). Indeed, Congress did not evidence an intent to overrule *Rash* (in fact, Congress codified it), and the focus of the "replacement value" standard remains on what a retail merchant would charge for like-kind property "considering the age and condition of the property." § 506(a)(2). In short, like-kind property is not necessarily reconditioned and warranted, and nothing in the new statute causes the court to alter its reasoning in this case.

---

[5] Automobiles are generally considered to be property acquired for personal, family, or household purposes. *E.g.*, *In re Bolze*, No. 06-40036, 2006 Bankr. LEXIS 2027 at *14 (Bankr. D. Kan. Aug. 31, 2006) ("An automobile can, and usually will, be used for personal, household and family use in most situations."); *In re Williams*, 228 B.R. 910, 913 (Bankr. N.D. Ill. 1999) (stating that an automobile is generally intended for personal, family, and household use for purposes of redemption under § 722 of the Bankruptcy Code); *In re Andrus*, 94 B.R. 76, 78 (Bankr. W.D. Pa. 1988) ("Televisions, VCR's, stereos and automobiles are consumer debts; they are intended for personal and/or household purposes.").

4

This district has adopted a replacement valuation standard based on the average between the N.A.D.A. retail and trade-in values, and the court sees no reason to discontinue this established practice here. Therefore, the presumptive replacement valuation standard in this district for the purpose of effecting a Chapter 13 cramdown of an automobile under 11 U.S.C. § 1325(a)(5) in cases filed before October 17, 2005, is the average of the N.A.D.A. retail and trade-in values.[6]

**B. Date of Valuation**

After determining the presumptive valuation standard, the next step is to determine on what date that standard is to apply – the petition date, the hearing date, or the effective date of the confirmed plan. Because automobiles typically depreciate in value, the replacement value of the automobile will likely be different depending on the applicable date.

For cases filed on or after October 17, 2005, by individual debtors in Chapter 7 or 13, with personal property that secures an allowed claim, the Bankruptcy Code sets the proper replacement valuation date:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition . . . .

11 U.S.C. § 506(a)(2).

For cases arising before October 17, 2005, like this one, "[t]here is little agreement in the reported cases on the date of fixing the value of collateral in Chapter 13 cases." Keith M. Lundin, *Chapter 13 Bankruptcy* § 107.1 (3d. ed. 2004). The Fourth Circuit has not directly ruled on the issue, but has

---

[6] Likewise, for the above-stated reasons, the court does not foresee any reason to depart from this presumptive valuation standard at this time for cases filed on or after October 17, 2005. *See In re Mayland*, No. 06-10283, 2006 Bankr. LEXIS 967 at *8 (Bankr. M.D.N.C. May 26, 2006) (confirming that the district's practice of setting the presumptive replacement value of an automobile at 90% of the N.A.D.A. retail value was consonant with new § 506(a)(2) and would continue to remain the standard for cases filed after the effective date of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act of 2005). Importantly, the presumption is just a guidepost – a creditor may always object to a debtor's proposed valuation of collateral and the court can determine the collateral's value after an evidentiary hearing.

5

indicated that the proper date for valuing collateral is as of the petition date. *See United Carolina Bank v. Hall*, 993 F.2d 1126, 1130 (4th Cir. 1993) (" The debtor may . . . under the 'cram down' provision . . . retain possession of the property by . . . providing for payments to the secured creditor that total not less than the value of the lien. If the secured creditor is undersecured, the total must be not less than the value of the securing property at the time the petition is filed."); *but see Rake v. Wade*, 508 U.S. 464, 469 (1993). ("§ 1325(a)(5)(B)(ii) guarantees that property distributed under a plan on account of a claim, including deferred cash payments in satisfaction of the claim must equal the present dollar value of such claim as of the confirmation date."), *superceded by statute on other grounds*, 11 U.S.C. § 1322(e). Before adopting a valuation date in this district for cases that arose before the October 17, 2005 effective date of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act, and concomitantly for future cases that are not delimited by new § 506(a)(2), the court will briefly examine the reasons why other jurisdictions have adopted one date over the other.

### 1.     The Petition Date

In *Chase Manhattan Bank USA NA v. Stembridge (In re Stembridge)*, 394 F.3d 383 (5th Cir. 2004), the Fifth Circuit Court of Appeals held – using some befuddling language – that the proper date for determining the replacement value of a cramdown automobile claim was the petition date. The Fifth Circuit reached this conclusion because:

> The bankruptcy court also ruled that the replacement value, determined as of the confirmation date, is a possible benchmark for valuation of the Truck. The question with respect to this ruling is, at what point in time should a secured asset be valued for the confirmation of a cram-down plan? This was not specifically addressed in *Rash*. We first note that the language of the cram-down provision implies that the value should not be determined as of the confirmation date. Section 1325(a) states that "the value, as of the effective date of the plan, of property to be distributed . . . is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). Because the value of the secured creditor's claim to be disbursed is as of the confirmation date--the "effective date of the plan"--then by defining the allowed claim also as of the confirmation date, the words "is not less than the allowed amount of such claim" become superfluous. Moreover, the code does not dictate a valuation at some point between filing and confirmation. If the code provides for neither the confirmation date nor some intermediate time before that date as the proper date for valuation, then the value of the creditor's interest must be determined vis-a-vis the amount of its interest at the institution of the bankruptcy proceedings--i.e., the filing date.

6

*Id.* at 387.

Additionally, the Fifth Circuit reasoned that the Bankruptcy Code's scheme of protecting the value of an asset against depreciation supported a petition date valuation. *Id.* The automatic stay is effective as of the petition date, which is also the date from which a creditor is entitled to automatic protection payments to shield against any decrease in the post-petition value of its property interest. *Id.* Preserving the value of the creditor's claim as of the petition date is the quid pro quo of allowing the debtor breathing room to reorganize the debtor's affairs. *Id.* Moreover, a later valuation date would "eviscerate the value of the secured creditor's claim" because, generally, the value of the collateral depreciates with each passing day. *Id.*

Similarly, the district court in the case of *In re Johnson*, 165 B.R. 524, 528-29 (S.D. Ga. 1994), reasoned that the petition date was the proper date for determining the replacement value of a cramdown vehicle because: (1) the petition date is the "watershed date of a bankruptcy proceeding;" (2) the scheme of Chapter 13 is to accommodate the competing goals of financial rehabilitation of the debtor with the preservation of the constitutionally protected property rights of the creditor; (3) the automatic stay is effective as of the petition date, which is also the effective date of the creditor's right to demand adequate protection; and (4) allowing a later valuation date would raise Fifth Amendment taking concerns if the collateral was depreciable personal property – the use of the § 507(b) super priority administrative expense claim to alleviate any takings concerns unduly complicates the proceedings. *See also In re Engebregtsen*, 337 B.R. 677, 679 (Bankr. E.D. Wis. 2005) ("This court is persuaded that the time of filing is the appropriate time to value a claim."); *In re Marequez*, 270 B.R. 761 (Bankr. D. Ariz. 2001) (determining a automobile's value as of the petition date and reducing that value to the extent that adequate protections payment were made between the petition date and the confirmation date).

### 2. The Hearing Date

Section 506(a)(1) of the Bankruptcy Code provides that "value shall be determined . . . *in conjunction with any hearing* on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a)(1) (emphasis added). Interpreting this language, and noting the flexibility of valuation determinations in bankruptcy, the bankruptcy court in the case of *In re Jones*, 5 B.R. 736 (Bankr. E.D. Va. 1980) reasoned:

7

> The date of valuation is also of importance. The only Code case on point, *In re Adams*, supra, holds that the date of valuation is the date of filing of the petition for bankruptcy. This inflexible timing of the date of valuation does not take into account prospective changes in the value of the property during the course of administration, nor does it comport with the standard [that a prudent businessman would employ to dispose of an asset].
>
> "Consistency in collateral valuation does not mean that collateral will be assigned the same value throughout the proceedings as at their commencement, but merely that the most commercially reasonable disposition practicable in the circumstances should be the standard universally applicable in all cases and at every phase of each case." Under this view, value is not to be determined as of the date of filing but on the date proceedings calling for the value of specific collateral are initiated. This provides the Court with the flexibility implicit in the statute. It also contemplates a valuation at or near the time of the litigation with regard to the property, thus providing the Court with a more complete factual basis to resolve the dispute.

*Id.* at 739 (citations omitted). *See also In re Anderson*, 88 B.R. 877, 884 (Bankr. N.D. Ind. 1988) ("The proper date to determine value of the collateral is the date of the valuation hearing . . . ."); *In re Klein*, 10 B.R. 657, 661 (Bankr. S.D.N.Y. 1981) (rejecting a petition date valuation because it did not take into account prospective changes in value, and setting the valuation date as the date of the "hearing, since, as a practical matter confirmation will almost always follow within a brief time after this hearing.").

### 3. The Effective Date of the Confirmed Plan

Section 1325(a)(5) of the Bankruptcy Code recites that a court shall confirm a plan if, inter alia, "*the value, as of the effective date of the plan*, of property to be distributed under the plan, on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii) (emphasis added). *See also Till v. SCS Credit Corp.*, 541 U.S. 465, 469 n.4 (2004) (stating that the term "present value" of an allowed claim, when used in conjunction with the Chapter 13 cramdown provision, meant "the value as of the effective date of the bankruptcy plan."). Based on the language of § 1325(a)(5), numerous courts have held that the date of confirmation – when it is the effective date of the plan – is the proper date for valuing collateral:

> [T]he majority of cases addressing valuation of collateral in the cram down context [hold] . . . that collateral should be valued as of or near the confirmation date. . . . [S]everal principles can . . . be extracted . . . to support this view. First, section 506 must be distinguished from § 502(b). The latter provides that claim allowance shall be determined

8

as of the date of the filing of the petition. Section 506, on the other hand, addresses what portion of that claim is secured by valuing the property that secures the claim. While the amount of the claim is fixed at the petition date, the statute does not fix the secured claim at that time. That principle is clear from the second sentence of § 506(a) that expressly contemplates that the secured portion of a claim may fluctuate based on the time and purpose for which valuation is sought. Thus, fixing the valuation determination as of the petition date based on § 502(b), as some courts have done, represents a flawed understanding of the interplay between §§ 502(b) and 506. Freed from the strictures of § 502(b), a court may then consider which date best serves the purposes for which the valuation is sought. Why then the confirmation date?

Many of the cases adopting the confirmation date for valuation conclude that since the purpose of the valuation is plan confirmation, fixing value close to that date is consistent with that second sentence of § 506(a). In *Fareed*, the court reasoned that secured claims are of such importance to determinations made in connection with the confirmation process (e.g., ability to fund plan) that a debtor can reasonably expect to be required to adjudicate collateral value at confirmation. I do not find this rationale by itself dispositive. Arguably the valuation determination can be made at or near the date of confirmation so that the amount needed to fund the plan can be ascertained but the date the determination is made need not be synonymous with the date the property values are fixed.

There must be another reason. The Court in *Kennedy*, supra came closest to identifying it. It believed that fixing the value of collateral at filing does not construe § 506(a) in harmony with the adequate protection provisions of the Bankruptcy Code:

> Adequate protection prevents loss to secured creditors during a case by requiring debtors to pay secured creditors for depreciation of their collateral prior to confirmation. If secured creditors' secured claims were fixed at filing, there would be no need for these payments--the creditor would automatically receive that value in a plan or liquidation.

One legal scholar has elaborated on this point. Pursuant to § 361, a creditor with depreciating collateral is entitled to adequate protection upon request. By fixing secured claims at the petition date, secured creditors would be receiving adequate protection automatically when the Code does not contemplate this right. Indeed a creditor which seeks and secures adequate protection of its interest in property securing its claim would receive a windfall if the claim was subsequently allowed at the value of its collateral on the petition date.

The availability of adequate protection is the statutory response to Triad's contention that a confirmation date valuation would be inequitable. While I recognize that given the amount at issue, layering an additional contested matter may not be a practical solution to the problem. Nonetheless, there are means to secure adequate protection by agreement or if confirmation is being delayed, by motion for relief from stay or in the

9

> alternative, adequate protection. While conceivably that might result in two valuation hearings, determining value of a vehicle is simple matter as evidenced here where the parties have agreed to the use of the N.A.D.A. Guide. Indeed this rule will bring to a head early in the case the disputed valuation issue. A contrary rule allows the creditor to sit quietly until confirmation while its collateral deteriorates, comforted that it will receive the collateral's value as of the petition date. Thus, it appears that valuation as of confirmation is more harmonious with the statutory scheme and the Chapter 13 process.

*In re King*, No. 01-37214, 2003 Bankr. LEXIS 1133 at *6-13 (Bankr. E.D. Pa. Sept. 2, 2003) (footnotes and citations omitted). *See also In re Farmer*, 257 B.R. 556, 561-62 (Bankr. D. Mont. 2000) (valuing the collateral as of the petition date for adequate protection purposes, and as of the confirmation date for purposes of cramdown); *Crain v. PBS Lending Corp. (In re Crain)*, 243 B.R. 75, 82-83 (Bankr. C.D. Cal. 1999) (holding that cramdown collateral was to be valued as of the effective date of the plan, which was ten days after entry of the confirmation order).

### 4. The Applicable Valuation Date in This District

For the following five reasons, this court believes that the applicable date for valuing collateral in cases that arose before the October 17, 2005 effective date of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act, and concomitantly for cases not delimited by new § 506(a)(2), is the effective date of the confirmed plan.

First, the language of 11 U.S.C. § 1325(a)(5)(B)(ii) expressly states that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim."[7] The Fifth Circuit in *Stembridge*, 394 F.3d at 387, overlooks a

---

[7] On one hand, the difference in valuation between the petition date and the "effective date of the plan" may prove to be de minimus in many cases. In this district, the debtor may chose the effective date of the debtor's plan. For example, if a debtor chooses to set the effective date of the plan as the date of the debtor's first plan payment, which is generally within 30 days of the filing of the plan, and within thirty days of the petition for cases arising on or after October 17, 2005, then any difference in value from the petition date is likely to be insignificant. 11 U.S.C. § 1326(a)(1).

On the other hand, the debtor may set the effective date of the plan as confirmation, and when confirmation is delayed several months, then the collateral may have depreciated significantly by the time of the plan's effective date. *See* Keith Lundin, *Chapter 13 Bankruptcy*, § 200.1 (3d ed. 2004) ("There are several possible dates to begin counting the three-year or five-year periods in § 1322(d). The court might count from the date of the filing of the case, from the date of confirmation, from the

critical distinction between having an "allowed claim" and having an "allowed secured claim." Any creditor that timely files a proof of claim has an "allowed claim." 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). As the Supreme Court instructed in *Dewsnup v. Timm*, 502 U.S. 410, 417-18 (1992), however, the secured portion of a creditor's allowed secured claim is not "frozen" from the time the petition is filed – the secured portion of a creditor's allowed claim may increase or decrease over time based on the collateral's change in value. Moreover, while bankruptcy recognizes state law security rights; bankruptcy generally does not increase or decrease the value of a creditor's security interest in collateral by ignoring subsequent changes in the collateral's value. *Cf.*, *Lane v. W. Interstate Bankcorp (In re Lane)*, 280 F.3d 663, 669 (6th Cir. 2002) (allowing a debtor to strip-off a lien of a wholly undersecured creditor in the debtor's principal residence based on the language of 11 U.S.C. § 1322(b)(2) – not §§ 506(a) and (d)). Because the Bankruptcy Code, as interpreted by the Supreme Court, allows the secured portion of a creditor's allowed claim to change during the pendency of the case, it is not appropriate to equate the term "allowed claim" with "allowed secured claim" for purpose of the cramdown provision of § 1325(a)(5)(B)(ii). The relevant language of § 1325(a)(5) is "allowed amount of *such claim*." (emphasis added). The antecedent of "such claim" is "secured claim." Section 506 ties the amount of the secured claim to the value of the collateral. Therefore, this court respectfully disagrees with the Fifth Circuit's reasoning in *Stembridge* to the extent that it found the language of § 1325(a)(5)(B)(ii) to require collateral to be valued as of the petition date for purposes of cramdown.

Second, the total amount of the creditor's allowed claim, which is determined as of the petition date, is important for determining the extent to which, on request, a creditor is entitled to adequate protection. Adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of collateral. § 361(1) (requiring cash payments to be made to a creditor when the debtor's use of that collateral decreases the value of the creditor's interest in that property). Before the enactment of the 2005 Bankruptcy Abuse Prevention and Consumer

---

date the first plan payment was due under § 1326, from the date of the entry of the order to commence payments or from the date that the debtor actually made the first payment under the plan.").

11

Protection Act, however, adequate protection payments were not automatic[8] and had to be requested by the creditor. *See* 3 *Collier on Bankruptcy* ¶ 361.01 (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2006) ("Sections 362, 363 and 364 of the Bankruptcy Code permit parties to request the court to determine whether the interest of an entity in property is adequately protected . . . . These sections do not authorize the court to impose adequate protection."). When a creditor fails to request adequate protection payments, if applicable, a creditor may also attempt to file an administrative claim under 11 U.S.C. § 503(b)(1) by arguing that the decrease in value of the collateral due to depreciation was an actual, necessary costs and expense of preserving the estate. *See, e.g.*, *Grundy Nat'l Bank v. Rife*, 876 F.2d 361, 363-65 (4th Cir. 1989) (allowing a creditor secured in the debtor's automobiles to have an administrative expense claim for the debtor's missed payments or the diminution in value of the automobile). The point here is only that the Bankruptcy Code contains adequate measures to compensate a creditor for the depreciation of its collateral before a plan is confirmed; setting the valuation of a claim as of the effective date of a plan does not eviscerate the value of the secured creditor's claim and this court does not believe that a request for adequate protection or the filing of an administrative expense claim unduly complicates bankruptcy proceedings.

Third, the court believes that requiring value to be set as of the valuation hearing date is technically incorrect because § 506(a)(1) states that value is to be determined "in light of the purpose of the valuation." In turn, the purpose of the valuation is to determine the value of the collateral "as of the effective date of the plan," § 1325(a)(5)(B)(ii); the hearing date is only relevant if it coincides with the confirmed plan's effective date. The court, however, recognizes the practicalities of setting the value of collateral as of the hearing date in cases where the effective date of the plan is not set as of the date of the first plan payment under § 1326(a)(1). Indeed, motions to value collateral are often heard concomitantly with confirmation, and in a large percentage of cases the effective date of the plan will be ten days from confirmation – any valuation change between the confirmation date and the effective date of the plan in such cases is likely to be de minimus.

---

[8] In this district, the pre-confirmation adequate protection payments now required by 11 U.S.C. § 1326(a)(1) are generally made by the Chapter 13 trustee and distributed after the creditor files a proof of claim.

Fourth, considering no compelling reason exists to adopt any other date, the court considers dispositive the language of § 506(a), which states "value shall be determined in light of the purpose of the valuation, and § 1325(a)(5)(B)(ii), which requires an allowed secured claim to receive a "value, as of the effective date of the plan . . . that is not less than the allowed amount of such claim." Although not specifically addressed by the United States Supreme Court, the court's holding in this case that the effective date of the plan is the applicable valuation date for cram down cases is consonant with statements made by that Court. *See Till*, 541 U.S. at 469 n.4 (stating that the term "present value" of an allowed claim, when used in conjunction with the Chapter 13 cramdown provision, meant "the value as of the effective date of the bankruptcy plan."); *Rake*, 508 U.S. at 469 ("§ 1325(a)(5)(B)(ii) guarantees that property distributed under a plan on account of a claim, including deferred cash payments in satisfaction of the claim must equal the present dollar value of such claim as of the confirmation date."). Although the Fourth Circuit in *United Carolina Bank*, 993 F.2d at 1130, indicated that the applicable valuation date for purposes of cramdown was the petition date, that statement was not essential to its holding, which dealt with the appropriate rate of interest to be used, and the case was decided before the Supreme Court's decisions in both *Till* and *Rake*. Moreover, *United Carolina Bank*, and its "coerced loan" approach to determining the cramdown interest rate was ultimately rejected by the Supreme Court in *Till*, 541 U.S. at 477. For these reasons, the court does not believe that it is bound by the Fourth Circuit's statement in *United Carolina Bank* regarding the applicable date of valuation in cramdown cases.

Fifth, nothing in the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act would compel a different interpretation of the law as it previously existed. In enacting new § 506(a)(2), which specifically sets the petition date as the applicable valuation date for a specific class of debtors, Congress stated that § 506(a)(2) was meant to "clarify" the law – not alter it. *Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256*, H.R. Rep. No. 109-31 Pt. 1, 109th Cong. 1st Sess., p. 17 (2005) (discussing S. 256's protection for secured creditors and stating that new § 506(a)(2) "clarifies the current law to specify that the value of a claim secured by personal property is the replacement value of such property without deduction of the secured creditor's costs of sale or marketing."). This court, however, does not believe that "clarify" was the proper word choice. "Clarify" means "to free of confusion," or "to make understandable." *Webster's Ninth New Collegiate Dictionary*,

13

245 (1991). As detailed above, the law with regard to the date of valuation for cramdown claims in Chapter 13 plans was not at all clear when the 2005 Act was passed, and the Committee Report is not consistent with earlier legislative history. *See* Sen. R. No. 989, 95th Cong., 2nd Sess. 68 (1978) ("[V]aluation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property. This determination shall be made in conjunction with any hearing on such disposition or use of property or on a plan affecting a creditor's interest. To illustrate, a valuation early in the case in a proceeding under sections 361-363 would not be binding upon the debtor or creditor at the time of confirmation of the plan."); 124 Cong. Rec. H11095 (daily ed. Sept. 28, 1978); S17411 (daily ed. Oct. 6, 1978) ("[D]eterminations for purposes of adequate protection are not binding for purposes of 'cramdown' on confirmation in a case under Chapter 11.") (remarks of Rep. Edwards and Sen. DeConcini).

In codifying the petition date as the applicable date of valuation for individuals in Chapter 7 or 13 cases that have personal property securing an allowed claim, the court observes the following: (1) Congress has decided to treat individual debtors in Chapter 7 and 13 with secured personal property debts subject to an allowed claim different from non-individual debtors, and from similar type debtors under Chapter 11 or 12 – a different valuation may be possible in similar cases based solely on the identity of the debtor, the type of secured debt, and the Chapter under which the debtor filed; (2) with respect to individual personal property secured debts in Chapter 13 cases, Congress has created a conflict between § 506(a)(2) and § 1325(a)(5)(B)(ii) in that such property cannot both be valued as of the petition date pursuant to § 506(a)(2), while being valued as of the effective date of the plan pursuant to § 1325(a)(5)(B)(ii); and (3) should the petition date ultimately prevail as of the applicable date of valuation in cramdown cases filed on or after October 17, 2005, then a debtor would likely be able to deduct from the secured creditor's claim any pre-confirmation adequate protection payments made by the debtor.[9]

In sum, the applicable date of valuation in this district for all cramdown claim arising before October 17, 2005, is the effective date of the plan. For cases filed on or after October 17, 2005, this rule remains

---

[9] In such as case, the end result may not be any different from the situation where the applicable date of valuation is the effective date of the plan and where the secured creditor requested, and received, pre-effective date adequate protection payments.

14

effective for all cases not delimited by § 506(a)(2). Because the issue is not yet before the court, the court declines to resolve the conflict between § 506(a)(2) and § 1325(a)(5)(B)(ii) in future cramdown cases involving the secured personal property debts of individuals that file Chapter 7 or 13.

**C. Case Specific Adjustments to the Presumptive Replacement Valuation**

WesBanco argues that the presumptive value of the Debtor's 2005 Surburban should be increased on the basis that the Debtor purchased a service contract ($1,995), undercoat rust proofing ($649), and theft protection ($219) at the time of sale, and these additional benefits should, when determining the replacement value of the property, increase the presumptive valuation.

The Debtor purchased her 2005 Surburban on April 28, 2005. Added accessories include: an auxiliary fuel tank, bed liner spray-on, fiberglass cap, roll bar, Bose stereo system, leather seats, navigation system, power sunroof, quadrasteer system, rear bucket seats, rear entertainment system, and a theft recovery system. On August 11, 2006, the Debtor represented that the vehcile had 14,933 miles of wear. Accounting for these options purchased by the Debtor, and the number of miles driven, the N.A.D.A. average trade-in is $31,725, and the average retail is $35,950. Accordingly, the presumptive replacement value of the vehicle is $32,837.50.[10]

Regarding additions for the Debtor's service contract, the court notes that the service contract has a term of 72 months or 75,000 miles, whichever is earlier. As of August 11, 2006, or 1.288 years into the service contract, the Debtor had only driven 14,933 miles; thus, it appears that based on the Debtor's driving habits, 72 months will elapse before 75,000 miles. As of October 1, 2006, the Debtor has used 1.424 years of the service contract; accordingly, a replacement vehicle of a like kind would have 4.576 years remaining on its service contract, or 76.3% of its value remaining. Therefore, the replacement value of the Debtor's vehicle should be increased by $1,522 to account for the remaining value of the service contract.[11]

---

[10] The actual dollar amount is to be determined as of the effective date of the plan. The Debtor's plan does not specify its effective date. The court reached its valuation determination using the N.A.D.A. publication as of the date of the opinion.

[11] The Debtor argues that no replacement valuation amount should be allocated to the Debtor's service contract "because if the vehicle were repossessed, the extended service contract would

15

Regarding the undercoat rust proofing that the Debtor purchased for $649, WesBanco stated that it was unable to assign a present day valuation to that product and/or service, and could not state the duration of the benefit, if any. Because the court has no evidence on the remaining value of that product and/or service, the court cannot determine whether or not the replacement value of the vehicle would increase or decrease and, therefore, will not adjust the value of the collateral based on rust proofing.

Finally, the theft recovery system that the Debtor purchased was an option that the N.A.D.A. guide has taken into account in determining the average trade-in and retail values. Thus, no addition to the presumptive replacement valuation standard is required.

### III. CONCLUSION

For the above-stated reasons, the replacement value of the Debtor's 2005 Chevrolet Surburban $34,359.50, which amount is subject to change consonant with this Memorandum Opinion based on the effective date of the Debtor's Chapter 13 plan.

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.

---

terminate." In fact, the Debtor's service contract provides that it is transferable with the sale of the vehicle to a new owner. Also, the Supreme Court in *Rash* focused on what it would cost a debtor to obtain collateral of a like kind – it expressly rejected the Fifth Circuit's foreclosure value approach. *Rash*, 520 U.S. at 960-65. Therefore, focusing on what a creditor would receive on repossession is improper.